IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:10-cv-01917-PAB

KRYSTLE BERNAL and
AMANDA KROL, on behalf of themselves
and all similarly situated individuals,

        Plaintiffs,

v.

GEORGE BURNETT, an individual,
WILLIAM OJILE, an individual,
ALTA COLLEGES, INC., a Delaware corporation,
WESTWOOD COLLEGE, INC.,
a Colorado corporation, et al.,

        Defendants.

_____/

**DEFENDANTS' MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2, 3, and 4, the individual arbitration agreements between Plaintiff and Westwood College, and *Stolt-Nielsen, S.A., et al. v. Animalfeeds International Corp.*, 130 S.Ct. 1758 (2010), Defendants (collectively the "School") move this Court: 1) to compel each Plaintiff to individual arbitration before the American Arbitration Association ("AAA"); 2) to dismiss or, alternatively, stay this case pending arbitration; and, 3) to assess against Plaintiffs' counsel the fees and costs incurred in defending what, under 28 U.S.C. § 1927, is a demonstrably "vexatious" case.

**I.    INTRODUCTION.**

Thirty-five years ago in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740 (1975), then-Justice Rehnquist made the much-quoted observation that a "complaint which by objective standards may have very little chance of success at trial has a settlement value to the plaintiff out of any proportion to its prospect of success at trial so long as he may prevent the suit from being

1

resolved against him by dismissal or summary judgment." "Strike suits" in this area, Justice Rehnquist continued, permit plaintiffs with groundless claims to abuse liberal federal court procedures and discovery, with the right to do so representing "*in terrorem*" increments in the settlement values of the alleged claims. *Id.* at 740-41.

In an egregious example of what Justice Rehnquist warned against, Plaintiffs and their counsel have engaged in obvious forum shopping by filing the second in a series of at least three "strike suits" involving the same putative class of students, the same Plaintiffs' lawyers[1], and virtually the same factual allegations and claims. The point of these suits is to find a way around a well-reasoned forty-six page Partial Final Clause Construction Award ("Arbitration Award") issued July 16, 2010 in an AAA arbitration (Ex. A hereto). That Arbitration Award found, after extensive argument and briefing before an Arbitrator Plaintiffs' counsel participated in choosing, that 1) the arbitration agreements of the putative class members, which includes Plaintiffs, do <u>not</u> contain an agreement to class arbitration, as *Stolt* requires; 2) that the issue of unconscionability had been submitted to the Arbitrator for his decision; and 3) that the individual arbitration agreements were <u>not</u> unconscionable. Section 10 of the FAA prescribes the sole method and very limited grounds to vacate that Arbitration Award. *See Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008) (nonplenary grounds for judicial review in § 10 of the FAA are exclusive). But Plaintiffs' counsel, desperate to maintain the "*in terrorem*" threat of keeping a possible class action alive, instead disingenuously failed to disclose to this Court the existence of the Arbitration Award, conveniently ignores the individual arbitration agreements they

---

[1] The Florida law firm of James, Hoyer, Newcomer, Smiljanich & Yanchunis P.A. ("James Hoyer") was sole counsel in the putative nationwide class arbitration before the AAA, and is co-counsel in this and another substantially similar putative class action lawsuit in California, both of which were only filed as a consequence of the adverse Clause Construction Award rendered in the AAA proceeding. James Hoyer is also attempting to act as class counsel in two other putative class action lawsuits it has filed against the School in Texas and Wisconsin.

previously enforced in the AAA, and hopes for a different result in this Court. Should they fail here, Plaintiffs' counsel will no doubt plug in new lead plaintiffs, file somewhere else to try to drum-up more press attention for their recycled accusations, all in search of a court that will allow them to use the "*in terrorem*" pendency of a possible class action to extort a settlement. However, the Arbitration Award is binding on Plaintiffs in this case under basic principles of issue preclusion. This Court should close the book on Plaintiffs' attempt to re-write what has already occurred.

Under § 4 of the FAA, the Court is required to make a summary determination of the existence of an agreement to arbitrate. The agreements of the two Plaintiffs in this case are indisputable. So is the fact that the alleged claims—meritless theories that students were misled into enrolling in the School, which mirror the claims Plaintiffs' counsel submitted in the AAA arbitration—are within the scope of the arbitration provision. These facts, and the Arbitrator's Clause Construction Award, should compel this Court immediately to compel Plaintiffs to individual arbitration; dismiss this case as a wholly improper "strike suit;" and assess sanctions under 28 U.S.C. § 1927 for the vexatious filing and maintenance of this lawsuit.

II.     **PLAINTIFFS' ENROLLMENT AND ARBITRATION AGREEMENTS.**

Plaintiffs enrolled in Westwood College, an institution accredited by a U.S. Department of Education-recognized accreditor, that concentrates in providing career-oriented education. Plaintiff Bernal enrolled in Westwood College's Denver South campus in about February 2005 and graduated from Westwood in about 2008. Plaintiff Kroll enrolled in Westwood College Online several times, most recently in February 2009. Each Plaintiff signed at least two related documents containing arbitration agreements. One agreement was a stand-alone "Agreement to Binding Arbitration and Waiver of Jury Trial", which states:

3

### Agreement to Binding Arbitration and Waiver of Jury Trial

I, __Krislie Bernal__, ("student") agree that any dispute arising from my enrollment at Westwood College, no matter how described, pleaded or styled, shall be resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association ("AAA") under its Commercial Rules. The award rendered by the arbitrator may be entered in any court having jurisdiction.

#### *Terms of Arbitration*
1. Both Student and the College irrevocably agree that any dispute between them shall be submitted to Arbitration.
2. Neither the Student nor the College shall file or maintain any lawsuit in any court against the other, and agree that any suit filed in violation of this Agreement shall be dismissed by the court in favor of an arbitration conducted pursuant to this Agreement.
3. The costs of the arbitration filing fee, arbitrator's compensation and facilities fees will be paid by the College, to the extent these fees are greater than a Superior Court filing fee.
4. The arbitrator's decision shall be set forth in writing and shall set forth the essential findings and conclusions upon which the decision is based.
5. Any remedy available from a court under the law shall be available in the arbitration.
6. Nothing in this Agreement prohibits the Student from filing a complaint with the Division of Private Occupational Schools.

#### *Procedure for Filing An Arbitration*
1. Students are strongly encouraged, but not required, to utilize the Grievance Procedure described in the Catalog, prior to filing an arbitration.
2. A student desiring to file an arbitration should first contact the School Director, who will provide the student with a copy of the AAA Commercial Rules. A Student desiring to file an Arbitration should then contact the American Arbitration Association at Denver, Colorado, which will provide the appropriate forms and detailed instructions. The Student should bring this form to AAA.
3. A student may, but need not, be represented by an attorney at the Arbitration.

#### *Acknowledgment of Waiver of Jury Trial and Availability of AAA Rules*
By my signature below, I acknowledge that I understand that both the College and I are irrevocably waiving rights to a trial by jury, and are selecting instead to submit any and all claims to the decision of an arbitrator instead of a court. I understand that the award of the arbitrator will be binding, and not merely advisory.

I also acknowledge that I may at any time, before or after my admission, obtain a copy of the Rules of the American Arbitration Association, at no cost, from the School Director.

Composite Ex. B hereto. The other arbitration provision, embedded in the Enrollment Agreement each Plaintiff executed, incorporates by reference the "Agreement to Binding Arbitration and Waiver of Jury Trial," which provides:

> I, the applicant … Acknowledge that any disputes relative to this contract or the education and training received by me, no matter how described, pleaded or styled, shall be resolved through binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association ("AAA") at Denver,

4

> Colorado, under its Commercial Rules. The award rendered by the arbitrator may be entered in any court having jurisdiction. Refer to "Agreement to Binding Arbitration and Waiver of Jury Trial" form in the application materials.

Composite Ex. C hereto. Plaintiffs have breached these arbitration agreements in two ways: first by filing this lawsuit; and second by purporting to bring it as a putative "class action," notably on the heels of the binding AAA Clause Construction Arbitration Award finding that no basis exists for a class action.

### III. THE PUTATIVE CLASS ARBITRATION BEFORE THE AAA.

In May 2009, Plaintiffs' counsel filed, in the name of four other Westwood College students, a putative class arbitration before the AAA. Plaintiffs' counsel chose the locale as Denver, *see* Ex. D hereto, and stipulated that Colorado substantive law governed. Ex. A at 4. The Demand purports to allege, *inter alia*, a supposed violation Colorado's Consumer Protection Act. The count is based on alleged misrepresentations about the School's accreditation, transferability of credits, its costs and fees, and the value of the School's education.[2] *See* Demand, Ex. E hereto. The "Class Allegations" of the Demand explain,

> Claimants and each Class Member are former or current students of Westwood College, Westwood Online or Redstone and <u>each entered into an Enrollment Agreement containing an Agreement to Binding Arbitration and Waiver of Jury Trial for any dispute arising from enrollment at Westwood College</u>…

Ex. E at ¶ 47 (emphasis added). The putative class is defined to include "All persons…whose last date of enrollment was on or after three years from the date" of Claimants' Demand for Arbitration in the AAA. Plaintiffs were putative class members in the AAA arbitration and were represented by the same James Hoyer firm as here.

The Prayer for Relief section includes, as its second request, a demand "[f]or a Clause Determination Award that the arbitration may be maintained as a class arbitration …" Ex. E at

---

[2] A second count, under Colorado's Consumer Credit Code, is also alleged.

5

27. Plaintiffs' counsel then formally moved the AAA Arbitrator to grant this relief. After briefing, the Arbitrator stayed his determination of counsel's motion while the *Stolt* case awaited a ruling in the U.S. Supreme Court. The issue pending in *Stolt* had direct relevance to the Clause Construction question—specifically, whether a purportedly "silent" agreement on class arbitration can authorize a class under the FAA. The U.S. Supreme Court answered the question on April 27, 2010, holding that silence is not sufficient under the FAA, and that there must a "contractual basis" for finding that the parties actually agreed to class arbitration.

More briefing followed, as the arguments shifted to whether a contractual basis in fact existed in the School's and students' arbitration agreements. Plaintiffs' counsel floated a new argument as well, anticipating (correctly) that *Stolt* destroyed the chances of a class arbitration. Plaintiffs' counsel argued that if the Arbitrator found there was no basis for class arbitration, then the arbitration agreements would be unconscionable. Counsel also argued that the AAA arbitration would have to be stopped while Claimants got an unconscionability determination in court. The School opposed this, noting that the matter in all respects had been submitted in arbitration under the AAA's Commercial Rules, which specifically reserves for the arbitrator all questions of the "existence, scope or validity" of an agreement to arbitrate.[3] Unconscionability was simply another part of Claimants' Clause Construction argument.

The Arbitrator issued a forty-six page Partial Final Clause Construction Award (Ex. A) on July 16, 2010. The Award has three main rulings: 1) there was <u>no</u> agreement to class arbitration as required by *Stolt*; 2) Claimants submitted the issue of unconscionability to the Arbitrator for a decision; and 3) under Colorado state law, the arbitration agreements were <u>not</u> unconscionable. Claimants did not challenge the Clause Construction Award under § 10 of the FAA.

---

[3] *See* Rule R-7(a), AAA Commercial Rules.

## IV. PLAINTIFFS' ALLEGED CLAIMS IN THIS COURT.

This action is virtually identical to the Demand in the AAA arbitration. The Complaint is based on the same supposed "misrepresentations" regarding transferability of credits, accreditation, and the quality and value of the School's services. Like the AAA action, the Complaint centers around a purported violation of Colorado's Consumer Protection Act. The putative class is also substantially the same, as it includes "[a]ll persons who have attended or participated in education programs conducted and operated by Defendants," although in this case residents of Texas, Wisconsin, and California are carved out. D.E. 1 at ¶ 92. Besides cosmetic changes to the named Plaintiffs, the addition of two corporate officers as Defendants in furtherance of the pressure tactic, and some new rhetoric calculated to make better copy for the newspapers to whom this Complaint was directed, the one meaningful difference between the current Complaint and counsel's AAA Demand is that Complaint says not one word about the arbitration agreements Plaintiffs' counsel highlighted in the AAA Demand.

## V. ARGUMENT.

### A. Plaintiffs Have Admitted and Indisputable Arbitration Agreements With Defendants That Cover the Dispute.

Under the FAA, arbitration agreements are "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA sets out the procedure for enforcement of arbitration agreements in court:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement…. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, <u>the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement</u>…. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof….

9 U.S.C. § 4 (emphasis added). The making of arbitration agreements is not in issue in this case. It was conceded in the AAA Demand that "each Class Member," including Plaintiffs here, executed an "Agreement to Binding Arbitration and Waiver of Jury Trial." Ex. E ¶ 47 hereto. Those agreements are attached hereto, Composite Exs. B and C, and cannot be disputed.

Plaintiffs also cannot dispute that the purported claim falls within the scope of the arbitration clause. Arbitrability is presumed under the FAA where the arbitration clause is broad, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See e.g., Newmont U.S.A. Ltd. v. Ins. Co. of North America*, 2010 WL 3155940 at *4 (10th Cir. Aug. 11, 2010) (citation omitted). There are no doubts here, as the arbitration agreements broadly encompass "any disputes relative to this contract or the education and training received by me, no matter how described, pleaded or styled." Plaintiffs' purported theory, that the School supposedly misrepresented or omitted facts to get them to enroll, comes squarely within the agreement—especially considering that the Enrollment Agreements specifically refute virtually all the alleged "misrepresentations."

Also, all the named Defendants can enforce Plaintiffs' arbitration agreements. Defendant Westwood College is a signatory to the arbitration agreements. Alta College is Westwood's parent company and, according to the Complaint, "implements the policies, procedures, and decision-making for the Westwood and Redstone College campuses …." Several other named Defendants are "d/b/a" entities of Westwood and are alleged to have operated the School's various campuses. Two individual Defendants, Alta's CEO and Chief Legal and Compliance Officer, are apparently being sued in their individual capacities for the alleged acts of the School. The non-Westwood Defendants therefore are either synonymous with Westwood, or Westwood's parent company or officers and employees. In all respects, Plaintiffs seek to hold

Defendants collectively responsible for the same interrelated, alleged conduct. It is widely recognized that a non-signatory can enforce an arbitration agreement where the signatory "raises allegations of ... substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *E.g. GATX Mgt. Services, LLC v. Weakland*, 171 F.Supp.2d 1159, 1166 (D. Colo. 2001) (collecting cases and quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). Here, Plaintiffs make no attempt to distinguish any Defendants but, instead, lump them into one in an effort to make them collectively responsible for the same alleged acts. Estoppel principles thus permit the non-Westwood Defendants to enforce the arbitration agreements alongside the signatory Westwood.

Accordingly, the Court should summarily compel the Plaintiffs to individual arbitration.

**B.  Questions About Class Arbitration and Unconscionability Have Been Decided by the AAA Arbitrator and Are Binding On Plaintiffs.**

**1.  Courts Have Rejected Similar Serial Suits to Challenge Class Decisions.**

The reason for this lawsuit is to try to get a different result on the James Hoyer law firm's failed efforts to maintain a class arbitration in the AAA. But the Arbitrator's Clause Construction Award is binding on Plaintiffs no matter what forum they retreat to. Courts have rejected the tactics of Plaintiffs' counsel in the context class certification decisions. In 2002, the Seventh Circuit Court of Appeals denied nationwide class certification in a product liability action involving Firestone tires, only to have the following ensue:

> [L]awyers representing the plaintiffs decided to try again, in other courts. Class suits have been filed in many jurisdictions; in at least five suits, plaintiffs seek certification of the same nationwide classes that our opinion nixes. One state judge certified a nationwide class on the day complaint was filed, without awaiting a response from the defendants and without giving reasons.

*In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 333 F.3d 763, 765 (7th Cir. 2003). The case returned to the Seventh Circuit in the form of an injunction action to enforce its ruling. The *Bridgestone* court understood the plaintiff's tactic to be one of percentages:

> Suppose that ... "9 of 10 judges in every state would rule against certifying a nationwide class" (in the federal courts, it has meant that 3 of 4 judges have ruled against the proposed nationwide classes). Although the 10% that see things otherwise are a distinct minority, one is bound to turn up if plaintiffs file enough suits—and, if one nationwide class *is* certified, then all the no-certification decisions fade into insignificance. A single positive trumps all the negatives... [I]f the plaintiffs file in ten different states the probability that at least one will certify a nationwide class is 65% ($0.9^{10} = 0.349$). Filing in 20 states produces an 88% probability of national class certification ($0.9^{20} = 0.122$). This happens whenever plaintiffs can roll the dice as many times as they please—when nationwide class certification sticks (because it subsumes all other suits) while a no-certification decision has no enduring effect."

*Id.* at 766-67. The *Bridgestone* plaintiffs argued that "the legal system entitles them to the benefit of this heads-I-win, tails-you-lose situation." *Id.* at 767. The court rejected this under principles of issue preclusion: "when federal litigation is followed by many duplicative state suits, it is sensible to handle the preclusive issue once and for all in the original case, rather than put the parties and state judges through an unproductive exercise." *Id.* at 766. In the reaching this result, the court batted away arguments that its prior ruling was not a "final judgment," and squarely rejected a contention that unnamed class members cannot be treated as "parties to the litigation." Since class members have the status of parties for purposes appeals and receiving the fruits of victory, the court reasoned, they are bound as well by adverse decisions. *Id.* at 768-69.

A 2008 Colorado state appellate decision, which also dealt with serial challenges to a failed class action, adopted *Bridgestone*'s reasoning. The court in *Goldsworthy v. American Family Mutual Insurance Co.*, 209 P.3d 1108 (Colo. App. 2008) applied Colorado's issue preclusion requirements to bar a third attempt to bring a class action over the insurer defendant's failure to offer personal injury protection coverage. Finding *Bridgestone*'s analysis of privity "instructive,"

10

the court rejected purported objections to binding unnamed putative class members to the prior rulings. The important thing in *Goldsworthy* was that the putative class members were adequately represented (it was undisputed they were because, just like in this case, their counsel was the same), and that they still had individual rights to assert claims outside of the class. *Goldsworthy* emphasized "the absurd consequences of a contrary decision":

> [T]he policyholders' position ... could lead to the filing of a series of identical class actions in which new named plaintiffs continuously seek class certification despite the fact that certification was denied in prior proceedings. The issue preclusion doctrine is designed to address precisely this situation, where it will relieve American Family from defending this issue in multiple lawsuits, conserve judicial resources, and promote reliance on the judicial system by preventing inconsistent decisions.

*Id.* at 1117-18. Plaintiffs are trying to do what the plaintiffs in *Bridgestone* and *Goldsworthy* unsuccessfully tried—roll the dice in a new forum and hope for a new outcome. For Plaintiffs, that outcome would include a ruling that allows them to ignore their arbitration agreements and proceed as a class. Issue preclusion bars that strategy.

### 2. The Clause Construction Award Is Subject to Issue Preclusion.

#### a. Colorado Issue Preclusion Principles Apply.

A federal court sitting in diversity "applies the issue preclusion principles of the state rendering the judgment." *Tatum v. Simpson*, 2007 WL 2914453, *4 (D. Colo. Oct. 1, 2007); *see Semtek Int'l, Inc. v. Lockheed Martin, Corp.*, 531 U.S. 497, 508 (2001) (adopting, for claim preclusion analysis, "the law that would be applied by the state courts in the State in which the federal diversity court sits"). In Colorado, issue preclusion bars re-litigation of legal or factual issues if (1) the issue is identical to an issue actually litigated and necessarily adjudicated, (2) the parties are in privity, (3) there was a "sufficiently firm" judgment, and (4) the party had a full and fair opportunity to litigate the issue. *E.g., Huffman v. Westmoreland Coal Co.*, 205 P.3d 501,

506 (Colo. App. 2009). Issue preclusion applies with equal force to issues decided in arbitration. *See, e.g., Coffey v. Dean Witter Reynolds, Inc.*, 961 F.2d 922, 925 n. 4 (10th Cir. 1992).

### b. The Issues Of Class-Wide Treatment And Unconscionability Are Identical To Those Adjudicated In Arbitration.

In Colorado, "[a]n issue is actually litigated when it is properly raised, submitted for determination, and determined…." *Goldsworthy*, 209 P. 3d at 1116. Plaintiffs' counsel submitted their demand to class arbitration to the Arbitrator, and the Arbitrator denied it, construing the very same arbitration provisions at issue in this motion. The same is true with the issue of unconscionability, which the Arbitrator also adjudicated in the School's favor. The identity of issues element therefore is satisfied.

### c. Plaintiffs Are in Privity With the Arbitral Plaintiffs.

Privity under Colorado law is satisfied where a substantial identity of interests and a "functional relationship" exists between the parties. *In re Matter of Application for Water Rights of Elk Dance Colorado, LLC*, 139 P.3d 660, 667 (Colo. 2006); *Goldsworthy*, 209 P.3d at 1115. As the courts in *Goldsworthy* and *Bridgestone* reasoned, the mere fact that Plaintiffs were putative class members rather than named parties is not a meaningful factor. What is meaningful is the fact that Plaintiffs, *as* putative class members, shared an obvious interest with the named Claimants in proceeding as a class. That shared interest is explicit in the AAA Demand:

> Claimants, <u>on behalf of themselves and each Class Member</u> [] request the following relief:… a Clause Determination Award that the arbitration may be maintained as a class arbitration in satisfaction of Rule 4 of the Supplementary Rules for Class Arbitration … and certifying the class and sub-class as defined herein;…

Ex. E at 27 (emphasis added). The failure to obtain this relief led to this action. Had counsel prevailed, this case would not exist. *See Bridgestone*, 333 F.3d at 768 (finding that, "[j]ust as

[unnamed class members] receive the fruits of victory, so an adverse decision is conclusive against them"). Accordingly, there is an identity of interests.

A functional relationship exists "when the absent parties' interests are presented and protected in the prior litigation.... [T]his relationship exists when the putative class members' interests are adequately represented." *Goldsworthy*, 209. P.3d at 1116. As *Goldsworthy* observed, it is difficult to contest adequate representation where the plaintiffs "were represented by the same attorneys." *See id.* at 1117. Plaintiffs have the same counsel they had in the AAA. The Clause Construction and unconscionability issues were extensively briefed and argued at hearings before the Arbitrator. Plaintiffs were thus "adequately represented."

Accordingly, Plaintiffs meet the privity requirement for issue preclusion.

### d. The Clause Construction Award Is "Sufficiently Firm."

Like *Bridgestone*, the Colorado Supreme Court has found the "final judgment" element satisfied where it is "'sufficiently firm' in the sense that it was not tentative, the parties had an opportunity to be heard, and there was an opportunity for review." *Carpenter v. Young*, 773 P.2d 561, 568 (Colo. 1989). In this case, the Arbitrator's Partial <u>Final</u> Clause Construction Award indicates by its title that it is firm. It followed extensive briefing and argument, and comprised a forty-six page decision. Claimants did not seek reconsideration, and the time for doing so has expired under the AAA Rules. Such a determination is sufficiently firm and not tentative. *See Goldsworthy*, 209 P.3d at 1118 (holding the denial of class certification was sufficiently firm and not tentative). Moreover, Plaintiffs have had the opportunity for review—the Award, consistent with AAA rules, stayed the arbitration for thirty days to give the parties the opportunity to challenge or confirm it, a time period that expired August 15. Plaintiffs' counsel did not challenge the Award. (The School has moved to confirm the award). Plaintiffs' counsel decided

instead to go "shopping" for a different result in new forums. The Clause Construction Award thus satisfies the final judgment requirement for issue preclusion.

### e. The Arbitral Claimants Had Full and Fair Opportunity to Litigate

In determining whether a party had a full and fair opportunity to litigate the issue, Colorado courts consider whether the remedies and procedures in the first proceeding were substantially different from the current proceeding, and whether the party in the first proceeding had sufficient incentive to vigorously assert or defend the position. *In re Matter of Application for Water Rights of Elk Dance Colorado, LLC*, 139 P.3d 660, 667 (Colo. 2006). Plaintiffs had much incentive to pursue vigorously counsel's claim that the arbitration agreements permit a class or otherwise are unconscionable. Indeed, Plaintiffs' counsel litigated those issues to the hilt. Having failed, they intend to raise the identical arguments in this Court. Further, the remedies and procedures under the AAA's Commercial Rules are sufficiently similar to those in this Court. *See Manu-Tronics, Inc. v. Effective Management Systems, Inc.*, 163 Wis. 2d 304, 317, 471 N.W.2d 263, 268 (Wis. App. 1991) (finding, after an arbitration under the AAA's Commercial Rules, that the plaintiff "was given the same procedural and substantive rights it would have enjoyed in circuit court").

For all of these reasons, then, the doctrine of issue preclusion bars Plaintiffs from rearguing the issues decided in the AAA: whether the arbitration agreements permit a class[4] and whether

---

[4] Absent issue preclusion, the Arbitrator's reasoning should guide the Court's decision to compel individual arbitrations. *Stolt* holds that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt* 130 S. Ct. at 1775 (italics in the original). Silence, or the failure to preclude class arbitration, cannot be interpreted as an agreement to arbitrate as a class. *See id.* In arbitration provisions in this case say nothing about "class arbitration." Nor is the agreement ambiguous. As the Arbitrator properly found, the agreements expressly cover "any disputes relative to this contract or the education training received by me ...," and therefore not other student contracts or education training received by them. The stand-alone agreement further precludes any possible inference of class arbitration: "both Student and the College irrevocable agree that any

the arbitration agreements are unconscionable. Since these arguments are central to Plaintiffs' defense of this motion, the Court should immediately compel individual arbitration consistent with the requirements of § 4.

## VI. CONCLUSION.

For the foregoing reasons, the School respectfully requests that this Court issue an order compelling Plaintiffs to submit their purported claims to individual arbitration before the AAA; dismissing Plaintiffs' claims in this Court; or alternatively staying all proceedings pending arbitration. Moreover, because Plaintiffs' counsel disingenuously failed to disclose the prior binding Clause Construction Award and because this putative class action is the product of obvious and vexatious forum shopping, the Court should assess against Plaintiffs' counsel all the costs and fees incurred in the defense of this matter as contemplated by 28 U.S.C. § 1927.

                                        Respectfully submitted,

Dated: August 24, 2010           s/Peter W. Homer
                                      Peter W. Homer
                                      Christopher King
                                      **HomerBonner**
                                      1441 Brickell Avenue, Suite 1200
                                      Miami, Florida 33131
                                      Telephone: (305) 350-5100
                                      Telecopier: (305) 982-0063
                                      E-mail:phomer@homerbonner.com;
                                               cking@homerbonner.com

                                      **ATTORNEYS FOR DEFENDANTS**

---

dispute between them shall be submitted to Arbitration." (emphasis added). This language plainly indicates that the parties intended to arbitrate individual disputes.

## CERTIFICATE OF COMPLAINCE WITH LOCAL RULE 7.1

Pursuant to Local Rule 7.1, the undersigned counsel for Defendants certifies that on August 23, 2010, we conferred with John A. Yanchunis, counsel for Plaintiffs, in a good faith effort to resolve the issues raised by this motion and have been unable to do so. Plaintiffs' counsel indicated that Plaintiffs are opposed to the relief requested herein.

s/Peter W. Homer

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of August 2010, I electronically filed the foregoing **Motion to Compel Individual Arbitration and Supporting Memorandum of Law** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Pendleton, Friedberg, Wilson & Hennessey, P.C.
Timothy M. Kratz, Esq.
1875 Lawrence Street, 10th Floor
Denver, CO 80202-1898
Telephone: 303-839-1204
Facsimile: 303-831 0786
E-mail: tkratz@penberg.com

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants via electronic mail:

Pendleton, Friedberg, Wilson & Hennessey, P.C.
Alan C. Freidberg, Esq.
1875 Lawrence Street, 10th Floor
Denver, CO 80202-1898
Telephone: 303-839-1204
Facsimile: 303-831 0786
E-mail: afriedberg@penberg.com

James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A.
John A. Yanchunis, Esq. (Florida Bar No. 0324681)
Jonathan B. Cohen, Esq. (Florida Bar No. 0027620)
Sean Estes, Esq. (Florida Bar No. 0055770)
4830 West Kennedy Boulevard
Urban Center One, Suite 550
Tampa, FL 33609
Telephone: 813-286-4100
Facsimile: 813-286-4174
E-mail: jyanchunis@jameshoyer.com
E-mail: jcohen@jameshoyer.com
E-mail: sestes@jameshoyer.com

*ATTORNEYS FOR PLAINTIFFS*

s/Peter W. Homer