**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-01917-PAB-KMT

KRYSTLE BERNAL, et al.,

        Plaintiffs,

v.

GEORGE BURNETT, an individual, et al.,

        Defendants.

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION
[Document 15, 8/14/10]**

---

Much like the picture on a thousand-piece puzzle cannot be perceived by looking only at one individual piece, the actions of a slick and sophisticated for-profit college cannot be properly assessed by way of one individual's story.  Defendants' determination to prevent this Court from conducting a "big picture" analysis is the motivating factor underlying Defendants' motion.  Indeed, seeking to silence the victims' collective voices through purported individual arbitration agreements is yet another element of the fraud that has allowed Westwood College, Westwood College Online and Redstone College (collectively "Westwood College") to continuously manipulate and deceive students for far too many years.  Granting Defendants' motion will enable them to avoid being held accountable for their systemic fraud, while continuing to prey on new and unsuspecting students in their quest to secure federal financial aid.

{00333506.DOC1}

1

The "puzzle pieces" making up the Plaintiffs' case are alarming not only in their number, but in the consistency and severity of deception they evidence.  Almost **900** current and former students of Westwood College have contacted Plaintiffs' counsel regarding their negative experiences at the for-profit institution; more continue to reach out every day.  The students' stories are startlingly consistent: a vulnerable student puts his or her trust in the school and is lured into enrollment through deceptive misrepresentations, only to wind up in crippling debt for virtually useless credits or a valueless degree.

The deceptive practices of Westwood College are part of a systemic plan implemented through a well-trained army of salesmen.  Almost 70 former employees of Westwood College have come forward to expose the practices of the school, sharing experiences of a high-pressure, profit-driven atmosphere with the direction to enroll students at any cost.  The former employees have recounted, and are prepared to testify to, misleading students regarding costs, transferability of credits, salary expectations, job placement statistics, financial aid terms and availability.  However, like an individual student's story, a single employee's story alone cannot illustrate the true patterns and practices occurring at Westwood College.

The cumulative evidence against Westwood College and its for-profit counterparts has raised national awareness of industry-wide abuses, drawing extensive media coverage,[1] several

---

[1] The practices of Westwood College have recently been covered by *CBS Evening News with Katie Couric* (http://www.cbsnews.com/stories/2010/09/05/eveningnews/main6838102.shtml), *Good Housekeeping* magazine (http://www.barryyeoman.com/articles/hardknocks.html), *The Denver Post* (http://www.denverpost.com/news/ci_15810764), the *Dow Jones Newswire* (http://tellittoal.newswires-americas.com/?p=1282) and *Bloomberg News* (http://www.bloomberg.com/news/2010-08-04/for-profit-colleges-boiler-room-recruiting-

{00333506.DOC1}

government investigations[2] and multiple hearings before the United States Senate.[3]   The

attention to this issue is not stemming from a singular complaint, but rather the recognition of a

massive problem with the potential for a collapse so widespread that it is reminiscent of the

collapsed housing bubble.[4]  Specifically recognizing a "history of violations of statue and rules"

---

described-at-senate-hearing.html), as well as in countless other national and local stories.

[2] Westwood College settled a qui tam suit in April, 2009, which alleged misrepresentations of licensing, job placement statistics and transferability of credits.  *United States of America and ex rel. Brazell v. Alta Colleges, Inc.,* No. 3:05-CV-0319-N (N.D. Tex – Dallas).  Also, the Colorado Attorney General's Office has announced that it is investigating 51 complaints against Westwood College regarding a broad scope of issues, but specifically including lack of transparency in cost and transferability of credits.  Sherry, Allison, "Colorado attorney general probes 51 complaints against Westwood College," *The Denver Post*, published Mar. 24, 2010 (last accessed Sept. 13, 2010, at http://www.denverpost.com/news/ci_14742986).

[3] The U.S Senate Committee on Health, Education, Labor and Pensions ("HELP Committee") has held a series of hearings regarding for-profit colleges.  At the second hearing, held on August 4, 2010, the Government Accountability Office (GAO) detailed the findings of an undercover investigation.  In sum, the GAO investigation found, that all fifteen schools investigated "made deceptive or otherwise questionable statements to GAO's undercover applicants."  Westwood was one of four colleges where a student was "encouraged by college personnel to falsify their financial aid forms to qualify for federal aid."  GAO Report at pg. 2. The full report can be accessed at :http://help.senate.gov/imo/media/doc/Kutz.pdf.

Joshua Pruyn, a former admissions representative for Westwood College, testified at that hearing.  His testimony is available here: http://help.senate.gov/imo/media/doc/Pruyn.pdf.  Pruyn testified that, "The more I learned about the school's programs and operations, the more it became clear that it wasn't just a few rogue representatives under pressure lying to students.  It was institutional, systematic and often hidden from the representatives themselves, who often didn't realize the information they shared with students was not true."  Pruyn Testimony at pg. 4.

[4] Steve Eisman, a high-profile hedge fund manager who is widely credited with accurately predicting the housing bubble collapse and who testified at the June 24 Senate hearings, stated:

> Until recently, I thought that there would never again be an opportunity to be
> involved with an industry as socially destructive and morally bankrupt as the

{00333506.DOC1}

3

at Westwood College, one state has already begun taking action to protect students from continued exposure to deceptive practices.[5]  While this marks the beginning of a much-needed industry-wide crackdown, the legions of past victims remain in desperate straits.

Defendants rely heavily on the continued perpetuation of their deceptive practices, having received hundreds of millions of dollars of taxpayer money through federally-backed loans.  And yet, Defendants now refuse to face these very same taxpayers in a public forum and defend against the mountain of evidence exposing their illegal practices.  To accomplish this avoidance, Defendants ask this Court to enforce an agreement unilaterally drafted by Defendants and forced upon enrolling students as a continuation of their deceptive practices.  Defendants argue that this is subject to issue preclusion, but that is simply a flawed analysis which exposes the desperation of Defendants' argument.  Rather, in light of the arguments presented below, this Court should determine that enforcing the agreement in whole or in part is unconscionable and, therefore, deny Defendants' motion.

## ARGUMENTS

I.    **THERE IS NO ISSUE PRECLUSION PRESENT.**

---

subprime mortgage industry.  I was wrong.  The For-Profit Education Industry has proven equal to the task. …

[5] The Texas Workforce Commission sent a series of four letters to Westwood College and its various owners and subsidiaries on August 26, 2010. An Amended Notice of Intent to Revoke Certificate of Approval was sent to Westwood College – Dallas.  A Notice of Denial of Certificate of Approval was sent to Westwood College – Fort Worth, Westwood College – Houston South and Redstone College – Denver.  The letters are public record and are attached hereto as Exhibit A in the format in which they were provided to Plaintiffs' counsel in response to a public records request.

{00333506.DOC1}

The burden of establishing issue preclusion falls on the party seeking preclusion.  *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 85 (Colo. 1999) (en banc).  In attempting to meet that burden, Defendants rely almost singularly on *Goldsworthy*, a case which has never been cited in any state or federal court to date.  *Goldsworthy* is most notable for its reliance on *Bridgestone/Firestone II*,[6] a decision which "departed from Supreme Court precedent and traditional principles of preclusion."[7]  Defendants fail to show that an identical issue has already been "actually litigated and necessarily adjudicated" or that Plaintiffs are in privity with any party to previous proceedings.[8]  *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999) (*en banc*).

Further, issue preclusion is not an absolute: "[E]ven where the minimal prerequisites for invocation of the doctrine are present, collateral estoppel is not an inflexible, universally applicable principle; policy considerations may limit its use where the ... underpinnings of the

---

[6] *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation ("Bridgestone/Firestone II")*, 333 F.3d 763, 765 (7th Cir. 2003).

[7] Cavanaugh, Edward.  Issue Preclusion in Complex Litigation, 29 Rev. Litig. 859, FN 151 (citing Civil Procedure – Class Action Certification – Seventh Circuit Holds That Denial Of Class Certification Can Have Preclusive Effect In State And Federal Courts – In re Bridgestone/Firestone, Inc., Tires Product Liability Litigation, 333 F.3d 763 (7th Cir. 2003), 117 Harv. L. Rev. 2031 (Apr. 2004)).

[8] These are two of the four elements that must *all* be satisfied for issue preclusion.  The other two elements are a final judgment on the merits and a "full and fair opportunity to litigate the issues in the prior proceeding.  *Bebo Constr. Co.*, 990 P.2d at 84-85.  Because the first two elements are not satisfied, Plaintiffs do not engage in a discussion of the other two elements.  However, neither of these is adequately satisfied and Defendants fail to meet their burden on these elements.

{00333506.DOC1}

doctrine are outweighed by other factors." *Vandenberg v. Superior Court*, 982 P.2d 229, 237 (Cal. 1999) (internal quotations omitted). This principle has been accepted and adopted in the United States District Court for the District of Colorado. ("Issue preclusion, like vacatur, is an equitable doctrine. Thus, I must consider the public interest in applying issue preclusion here." *Siemens Med. Sys., Inc. v. Nuclear Cardiology Sys., Inc.*, 945 F. Supp. 1421, 1437 (D. Colo. 1996)).

A.      **The Issue Before This Court Is Not Identical to an Issue Actually Litigated and Necessarily Adjudicated in the Arbitration.**

The issue presently before this Court is whether Plaintiffs may continue in federal court. Defendants argue that issue preclusion applies as a result of a Partial Final Clause Construction Award in an arbitration filed with the American Arbitration Association (herein "the arbitration" or specifically "the arbitration award").[9] The issue previously submitted to the Arbitrator for determination was whether the arbitration could proceed on a class basis. Indeed, the arbitration award starts with the recognition that, "this matter is before the Arbitrator for the issuance of a Partial Final Award, determining, as a threshold matter, whether the arbitration clause in this case permits the arbitration to proceed on behalf of a class." Arb. Award at pg. 1. These are not identical issues.

Defendants also briefly – albeit without supporting fact or law – assert that the issue of unconscionability has already been adjudicated in arbitration. "A legally raised issue is one that a party, by appropriate pleading, asserts through a claim or cause of action against the other."

---

[9] *Mensch, et al. v. Alta Colleges, et al.*, AAA No. 11 516 00995 09, filed in May, 2009.

{00333506.DOC1}

*Bebo Constr. Co.*, 990 P.2d at 85.  The Arbitrator specifically stated that *he* – not either party – raised the issue of unconscionability and requested briefings on the issue.  Arb. Award at pg. 33. Acknowledging in his opinion that "the issue of unconscionability is ideally an issue that should be decided by a court rather than an arbitrator," the Arbitrator even invited a court to "find that I have exceeded my authority" in contemplating unconscionability.  Arb. Award. at pg. 35.

Further, the issue before the Arbitrator was class treatment in arbitration, making unconscionability a collateral issue.  Arb. Award at pg. 33.  "An issue is 'necessarily adjudicated' when a determination on that issue was necessary to the judgment."  *In re Water Rights of Elk Dance Colorado, LLC*, 139 P.3d 660, 667 (citing *Bebo Const. Co.*, 990 P.2d at 85). By the Arbitrator's own admission, the determination of unconscionability was entirely unnecessary to the ultimate judgment on class treatment.  Arb. Award at pg. 33.

**B.  Plaintiffs Are Not in Privity with Claimants in Arbitration.**

"Privity between a party and a nonparty requires both a substantial identity of interests and a working or functional relationship … in which the interests of the non-party are presented and protected by the party in the litigation."  *Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo. 1999) (internal quotations omitted).  While Defendants once again rely on *Goldsworthy*, they notably omit the applicable standard set forth for establishing a functional relationship:

> A nonparty is adequately represented for preclusion purposes if the interests of the nonparty and his or her representative are aligned, and the procedure applied by the original court fairly ensured the protection of the interests of the nonparty.  **In the class-action context, these limitations are implemented by the procedural safeguards contained in [Rule 23].**

209 P.3d at 1116 (internal citations omitted) (emphasis added).   The underlying cases in *Goldsworthy* had been litigated through a class certification determination, and both the representatives and representatives' counsel had been deemed adequate under a Rule 23 analysis.

A Rule 23 determination was never reached in the arbitration.   The adequacy of the Claimants to represent the proposed class was never determined and cannot be presumed. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481-82 (5th Cir. 2001) (finding reversible error to presume the adequacy of a class representative).   "Adequate representation" is a technical term that cannot simply be created by declaring it so.   Defendants have not even attempted to satisfy this element, and thus, their argument fails summarily.

## II.   THE ARBITRATION AGREEMENTS THAT DEFENDANTS SEEK TO ENFORCE ARE UNCONSCIONABLE.

Plaintiffs recognize that unconscionability is historically a high hurdle under Colorado law.   Specifically, the courts have expressed an interest in avoiding "the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain." *Lincoln General Ins. Co. v. Bailey*, 224 P.3d 336, 341 (Colo. App. 2009), *cert. denied*, No. 09SC527, 2010 WL 597816 (Feb. 22, 2010).   However, the agreements at issue before this Court are not simply the result of a bad bargain.   They are part of a sophisticated scheme to deceive students.   This case represents the exact circumstances where some exercise of judicial paternalism is not only appropriate, but necessary.

Arbitration agreements are severable from the contract in which they are contained, but, as the Supreme Court of the United States has stated, this does not render arbitration agreements

"unassailable." *Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010). Where a challenge is to the arbitration agreement itself, the validity and enforceability must be determined by a federal court. *Id.* Arbitration agreements are rendered unenforceable on "grounds as exist at law or in equity for the revocation of any contract." *Stolt-Nielsen, S.A. v. AnimalFeeds Internat'l Corp.*, 130 S. Ct. 1758, 1773 (2010). "State law, whether of legislative or judicial origin," may be applied to invalidate arbitration clauses "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (emphasis in original).

In Colorado, contract interpretation is analyzed on "an approach which strives to uphold reasonable expectations." *Davis v. M.L.G. Group*, 712 P.2d 985, 990 (Colo. 1986) (discussing *Automobile Leasing & Rental, Inc. v. Thomas*, 679 P.2d 1269 (Nev. 1984). This establishes a view of contract interpretation focused on fairness, rather than unwavering adherence to contract terms. *Id.* at 990. As the *Davis* court recognized, this sort of realism comports with the doctrine of unconscionability. *Id.* at 991.

> In order to support a finding of unconscionability, there must be evidence of some overreaching on the part of one of the parties such as that which results from an inequality of bargaining power or under other circumstances in which there is an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favourable to that party.

*Davis*, 712 P.2d at 991 (citing *McMillion v. McMillion*, 522 P.2d 125 (Colo. App. 1974)). In reaching that determination, the *Davis* court set forth seven factors that are the current standard for determining unconscionability:

- A standardized agreement executed by parties of unequal bargaining strength;

{00333506.DOC1}

- Lack of opportunity to read or become familiar with a document before signing it;
- Use of fine print in the portion of the contract containing the provision;
- Absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated;
- The terms of the contract, including substantive unfairness;
- The relationship of the parties, including factors of assent, unfair surprise and notice; and
- All the circumstances surrounding the formation of the contract, including its commercial setting, purpose and effect.

*Bonanno v. Quizno's Franchise Co.*, LLC, o. 06-CV-02358-CMA-KLM, 2009 WL 1068744 at

*17-18 (Apr. 20, 2009) (citing *Davis*, 712 P.2d at 991.)

A.   **THE SEVEN FACTORS FAVOR A FINDING OF UNCONSCIONABILITY.**

i.   **The Agreement Is a Standard Contract Which a Student Cannot Negotiate.**

The arbitration agreement is a standard adhesion contract, unilaterally drafted by

Defendants without any input or room for negotiation by the student.   While Plaintiffs could

have decided not to enroll at Westwood College, they did not have any option but to agree to

these exact terms if they did want to enroll.   *Compare Bonanno*, 2009 WL 1068744 at *18-19

(Even where franchisees could have gone elsewhere and not invested in Quizno's, "the fact

remains that Plaintiffs could not truly negotiate or rewrite any provisions of the franchise

agreement. . . .").   When Plaintiff Krol enrolled, she thought she had to accept all of the

enrollment documents just as they were presented to her or not attend the college and was not

given the opportunity to negotiate any portion of the agreement.   Declaration of Amanda Krol at

¶ 13, attached hereto as Exhibit B.   This indicates an unconscionable agreement.

ii.   **Students Have No Opportunity to Read or Become Familiar With the Document Before Signing It.**

{00333506.DOC1}

The agreement set forth by Defendants is one of many papers supposedly signed by a student at the time of enrollment.  Admissions Representatives fill out all of the information for the student and the student only adds an "e-signature" by answering a verification question at the end of the online process.  It is not required for an online student to actually view each document, and each document is not explained individually, whether online or in person. Plaintiff Krol does not recall entering into an arbitration agreement, nor does she recall any representative telling her that she was doing so.  Krol Declaration at ¶ 11.  Indeed, Krol did not even know what "arbitration" meant at the time she enrolled.  Krol Declaration at ¶ 12.

Further, the arbitration agreement is not posted online or in any location where a student could review it before deciding whether to attend Westwood College.  There is no way for a student to view the arbitration agreement without actually undertaking the enrollment process. *Contra. Bonanno*, 2009 WL 1068744 at \*19 (finding that franchisees received the agreement 10 days prior to signing and were actually encouraged to seek independent counsel to review the terms, thus providing at least an opportunity for review.).  Because Plaintiffs were given no opportunity to review the document before signing, no opportunity to seek independent counsel and no explanation as to the significance of the document, this factor heavily favors a finding of unconscionability.

      **iii.**    **The *Bonanno* Argument Regarding a "Commercially Reasonable" Agreement Should Be Rejected by the Court.**

Unlike the defendants in *Bonanno*, the instant Defendants have not offered any evidence that their contract is commercially reasonable.  However, even assuming the same argument –

that the arbitration agreement minimizes the chance of litigation and that the class ban minimizes mass litigation – these are not positions that this Court should accept.   Allowing such a "nefarious" rationale amounts to an endorsement of the profit-driven business model that has led to the deceptive practices underlying this case.  *Bonanno*, 2009 WL 1068744 at *20 (recognizing that provisions that discourage litigation "likely benefits Quizno's bottom line.").

The potential for class action cases serves a critical deterrent function which is expected to make businesses operate with a consumer-consciousness.  *Powertel, Inc. v. Bexley,* 743 So.2d 570, 576 (Fla. Dist .Ct. App. 1999) (Class-wide relief "ordinarily has some deterrent effect on a manufacturer or service provider. . . .").  Defendants' actions, discussed in detail *supra*, expose the desperate need for deterrence.  Allowing the avoidance of such a deterrence mechanism to be a factor weighing against unconscionability is, itself, unconscionable.  Simply put, the *Bonanno* court got this one wrong.  The offering of this distorted rationale should counsel in favor of finding unconscionability, not against it.

### iv.    The Terms of the Contract Are Substantively Unconscionable.

This is "perhaps the most important" factor weighed in the analysis, and one that clearly leans in Plaintiffs' favor.  *Bonanno,* 2009 WL 1068744 at *20.  The ultimate evaluation for substantive unconscionability comes down to whether individual actions are "unfathomable and unfair" if the agreement is enforced.  *Id.*

Defendants seek to enforce an agreement with which they themselves do not comply.  Defendants have brazenly filed dozens of cases in courts against students around the country.  Plaintiffs' counsel has identified legal proceedings initiated by Westwood College in at least nine

{00333506.DOC1}

states: California, Colorado, Georgia, Illinois, Texas, Maryland, Virginia, Missouri and Minnesota.   At best, this treatment renders the agreement illusory because Defendants can change the terms when most favorable to them.   *Dumais v. America Golf Corp.*, 150 F.Supp.2d 1182, 1193 (D. New Mexico 2003) (holding that an arbitration agreement that bound an employee, but left employer free to renege, was illusory and could not be enforced against employee.)   At worst, this is a flagrant disregard for the agreement that Defendants seek to enforce, which results in a patently unfair disadvantage to Plaintiffs and their fellow students. Defendants may not use the law as a sword and an arbitration agreement as a shield at the same time.

Additionally, Defendants aggressively attacked the James Hoyer firm in retaliation for a multi-year investigation that has unravelled the web of deception employed by the Westwood College.   Their attacks have culminated in a meritless lawsuit against not only the James Hoyer firm as an entity, but against several attorneys individually.   The purpose of this baseless suit is a transparent attempt to discredit James Hoyer and to serve as a warning sign to any other attorney considering taking action against Defendants.   Even where Plaintiffs' claims may provide for attorneys' fees, this is unlikely enough to overcome the deterrent effect of threatened personal attacks and litigation.   Thus, by Defendants' own actions, forcing the students to seek individual representation would materially limit the likelihood of a student finding counsel to assist in bringing his or her claims.

Finally, and perhaps most significantly, the confidential and non-precedential nature of individual arbitration renders the agreement unconscionable as to the claims brought by

{00333506.DOC1}

Plaintiffs.  Fraud-based claims must be pled with particularity, requiring a significant investment of both time and money before even filing suit.  FED. R. CIV. P. 9(b); *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.1997).  Scarce is the individual plaintiff (or individual attorney) who has the resources to commit to the massive investigation necessary to reveal the fraud and systemic deceptive practices required to make a successful case.  Moreover, the former employees are arguably the most valuable witnesses in building the complete picture of deceptive practices, but they cannot realistically be expected to testify at over eight-hundred individual hearings.  Even if one plaintiff was able to acquire and present enough evidence to make a successful case, it would have no precedential value to another plaintiff.  Each and every aggrieved student would be faced with putting on the same evidence, time and time again.

Ultimately, the application of both the arbitration agreement as a whole and the specific supposed-class ban, coupled with Defendants' aggressive actions to avoid any other attorney bringing claims against the Westwood College, would "preclude [students] from obtaining legal redress." *Bonanno*, 2009 WL 1068744 at *21.  As such, the agreement must be viewed as substantively unconscionable and is another factor in favor of Plaintiffs' analysis.

### v.    Plaintiffs Were in a Position of Trust and Reliance.

Plaintiffs and their fellow students relied wholly on Defendants' representatives to provide them with all the information necessary to make an informed decision about attending Westwood College.  The evaluation of this factor is similar to that of the first factor. Defendants retained all bargaining power and used a form contract that could not be negotiated; there is no possible way to argue that Defendants and Plaintiffs were in an "equal, arms-length situation."

{00333506.DOC1}

*Bonanno*, 2009 WL 1068744 at *22.   Plaintiff Krol was seventeen-years-old when she first enrolled at Westwood College and had no business experience which would aid her in understanding the terms of  Defendants' agreement.   Krol Declaration at ¶ 10.   Indeed, Krol doesn't recall entering into any contract of any kind prior to enrolling at Westwood College Online.   *Ibid.*   As stated by a former employee, students "absolutely did not understand" what they were signing, but trusted the School's representatives that it was the right thing to do.   Such circumstances give rise to a finding of unconscionability.

### vi.    The Overall Circumstances Are Evidence of an Unconscionable Agreement.

Defendants' pattern and practice of making any representation necessary to induce a student to enroll is well-documented.   *See* Footnotes 1-3 and 5, *supra*.   It is evident that transparency and the students' best interests are not primary concerns of Defendants.   To suggest that, amidst a sales pitch full of misrepresentations, a student would somehow be fully informed and aware of a document that singularly favors the Defendants' interest is simply unrealistic.  The overall circumstances of this for-profit entity heavily suggest that the agreement forced upon the students is unconscionable.

## III.    CONCLUSION

For the reasons above, Plaintiffs respectfully request that this Court deny Defendants' Motion to Compel Individual Arbitration.[10]

---

[10] Defendants offer no arguments, nor any realistic basis for their request for sanctions.  As discussed herein, the arbitration award is wholly unrelated to the instant proceedings and, as such, was not required to be discussed in any previous pleadings before this Court.  Further, because this Court is the most appropriate place for Plaintiffs' claims to be heard, there is no

{00333506.DOC1}

Respectfully submitted this 14th day of September, 2010.

<div style="margin-left: 40%;">

*s/ Alan C. Friedberg* _____

Alan C. Friedberg
afriedberg@penberg.com
Timothy M. Kratz
tkratz@penberg.com
PENDLETON, FRIEDBERG,
WILSON & HENNESSEY, P.C.
1875 Lawrence Street, 10th Floor
Denver, CO 80202-1898
Telephone: 303-839-1204
Facsimile: 303-831-0786

John A. Yanchunis
jyanchunis@jameshoyer.com
JAMES, HOYER, NEWCOMER,
SMILJANICH & YANCHUNIS, P.A.
4830 West Kennedy Blvd., Suite 550
Tampa, FL 33609
Telephone: 813-286-4100
Facsimile: 813-286-4174

**ATTORNEYS FOR PLAINTIFFS**

</div>

---

basis (nor argument presented) for the request for attorneys' fees.  .

{00333506.DOC1}

## CERTIFICATE OF SERVICE

I HEREBY certify that the foregoing Plaintiffs' Response in Opposition to Defendants' Motion to Compel Individual Arbitration has been filed this 14th day of September, 2010 using the Court CM/ECF System which will send a Notice of E Filing to all counsel of record.

*s/ Alan C. Friedberg*_____

{00333506.DOC1}