**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10–cv–01917–WJM–KMT

KRYSTLE BERNAL, and
AMANDA KROL, on behalf of themselves and all similarly situated individuals,

    Plaintiffs,

v.

GEORGE BURNETT, an individual,
WILLIAM OJILE, an individual,
ALTA COLLEGES, INC., a Delaware corporation,
WESTWOOD COLLEGE, INC., a Colorado corporation,
TRAV CORPORATION, a Colorado corporation d/b/a Westwood College and Westwood College Online,
GRANT CORPORATION, a Colorado corporation d/b/a Westwood College,
WESGRAY CORPORATION, a Colorado corporation d/b/a Westwood College,
EL NELL, INC., a Colorado corporation d/b/a Westwood College,
PARIS MANAGEMENT COMPANY, a Delaware corporation d/b/a Redstone College,
ELBERT, INC., a Colorado corporation d/b/a Westwood College, and
BOUNTY ISLAND CORPORATION, a Delaware corporation formerly d/b/a Redstone College,

    Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION**

---

    Plaintiffs Krystle Bernal and Amanda Krol filed this action on behalf of themselves and others similarly situated against George Burnett, William Ojile, Alta Colleges, Inc., Westwood College, Inc., Trav Corporation d/b/a Westwood College d/b/a Westwood College Online, Grant Corporation d/b/a Westwood College Online, Wesgray Corporation d/b/a Westwood College, El Nell, Inc. d/b/a Westwood College, Paris Management Company d/b/a Redstone College, Elbert Inc. d/b/a Westwood College,

and Bounty Island Corporation d/b/a Redstone College.  Plaintiffs—former students at Defendants' various entities—allege that Defendants violated the Colorado Consumer Protection Act by, amongst other things, misrepresenting the type and quality of services supplied by Defendants' various for-profit colleges and online educational programs.

Before the Court is Defendants' Motion to Compel Individual Arbitration asking the Court to dismiss this action based on issue preclusion, or, in the alternative, to order that Plaintiff pursue their claims in individual arbitration.  Plaintiffs oppose the motion and ask the Court to find the arbitration clause unconscionable as a matter of law.

For the reasons explained below, the Court GRANTS Defendants' Motion to Compel Arbitration.

## I.  BACKGROUND

### A.  Factual Background

Plaintiffs Krystle Bernal and Amanda Krol attended Westwood College and/or Westwood College Online between 2004 and 2009.  (Compl. (ECF No. 1) p. 6.) Defendant Alta Colleges Inc. is the parent company of Westwood Colleges, Inc., which is the operating company for seventeen colleges and trade schools located in six states under the names Westwood College, Westwood College Online, and Redstone College. (*Id.* ¶ 6.)  Defendant George Burnett has been acting CEO and Director of Alta Colleges since 2006.  (*Id.* ¶ 14.)  Defendant William Ojile is Chief Legal and Compliance Officer for Alta Colleges.  (*Id.* ¶ 15.)

Plaintiffs' Complaint alleges that Defendants, by and through their employees,

systemically engage in deceptive trade practices by misrepresenting key facts about their operations, including the total cost of education at the schools, the prospect of job placement and salary expectations after graduation, the schools' accreditation status, and the transferability of credits obtained at the schools. (Compl. ¶¶ 16-36.) Plaintiffs claim that Defendants' "admissions counselors" or "academic counselors" employ high-pressure sales tactics to deceptively entice students into enrolling. According to Plaintiffs, Defendants provide extensive training in these high-pressure sales tactics and require that their counselors meet "budgets" with respect to enrollment. (*Id.* ¶¶ 37-50.)

Plaintiffs allege that these systemic practices violate the Colorado Consumer Protection Act. (*Id.* ¶¶ 102-120.) Plaintiffs seek class certification, an injunction against continuing unlawful actions, and monetary relief as allowed by the Consumer Protection Act. (*Id.* pp. 43-44.)

**B.      Arbitration Agreements**

Plaintiff Krystle Bernal enrolled in Defendants' fashion merchandising program in 2005. (Bernal Decl. (ECF No. 24) ¶ 3.) Plaintiff Amanda Krol enrolled in Defendants' criminal justice program in March 2004. (Krol Decl. (ECF No. 21-2) ¶ 3.) As part of the enrollment process, both Plaintiffs completed Defendants' standard enrollment documents. (ECF No. 15-2.) Included in the enrollment documents was a stand-alone document entitled: "Agreement to Binding Arbitration and Waiver of Jury Trial" which stated in part that the signer "agree[s] that any dispute arising from my enrollment at Westwood College, no matter how described, pleaded or styled, shall be resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association ("AAA") under its Commercial Rules." (*Id.*) It further provides:

"Both the Student and College irrevocably agree that any dispute between them shall be submitted to arbitration." (*Id.*) Additionally, embedded in another document that each Plaintiff signed was a provision that stated:

> I, the applicant . . . acknowledge that any disputes relative to this contract or the education and training received by me, no matter how described, pleaded or styled, shall be resolved through binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association ("AAA") at Denver, Colorado under its Commercial Rules. The award rendered by the arbitrator may be entered in any court having jurisdiction. Refer to "Agreement to Binding Arbitration and Waiver of Jury Trial" form in the application materials.

(ECF No. 15-3.)  Together these forms will be referred to as the Arbitration Agreements.

Neither Plaintiff had any commercial or business experience before enrolling in Defendants' programs. (ECF No. 21-2 & 24.) Krol was seventeen and Bernal was nineteen when they initially enrolled. (*Id.*) Plaintiffs did not believe that they had the right or ability to negotiate any of the terms contained in the enrollment materials. (*Id.*) Plaintiffs do not remember signing the Arbitration Agreements. (*Id.*) Defendants' admissions representatives made no effort to highlight the Arbitration Agreements in the admissions materials or to explain what they meant and what rights Plaintiffs were giving up. (*Id.*) Neither Plaintiff understood that she was waiving her right to pursue litigation. (*Id.*)

**C.    AAA Proceeding**

In May 2009, Michael Mensch, Tyrone Bailey, and Jessica Rosales (the "Mensch Plaintiffs"), represented by the same counsel as represents Plaintiffs in this action, filed a putative class arbitration before the American Arbitration Association arguing that

Defendants' business practices violated the Colorado Consumer Protection Act. (ECF No. 15-5 at 2.) The putative class included "All persons . . . whose last date of enrollment was on or after three years from the date" of the demand. (Defs.' Mot. To Compel at 5.) Bernal and Krol were part of the putative class though they did not know any of the Mensch Plaintiffs and were not aware of or following the outcome of the putative class arbitration. (ECF Nos. 21-2 & 22-1.)

The Mensch Plaintiffs sought a "Clause Determination Award that the Arbitration may be maintained as a class arbitration." (*Id.*) The parties chose Arbitrator William Baker to preside over the clause determination award. On July 16, 2010, Arbitrator Baker issued a forty-six page Partial Final Clause Construction Award. (ECF No. 25-1.) He ruled: (1) there was no explicit agreement to class arbitration so as to allow him to compel class arbitration under *Stolt-Nielsen v. AnimalFeeds*, 130 S. Ct. 1758 (2010); and (2) under Colorado law, the arbitration agreement was not unconscionable. (ECF No. 25-1 at 46.) On March 8, 2011, the Denver County District Court confirmed Arbitrator Baker's decision. (ECF No. 63-1.)

**D.     Procedural History In This Case**

Plaintiffs initiated this action on August 11, 2010. (ECF No. 1.) Defendants filed the instant Motion to Compel Arbitration on August 24, 2010. (ECF No. 15.) The Motion is fully briefed and ready for ruling. The Supreme Court issued *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) on April 27, 2011. The Court requested supplemental briefing from the parties addressing *Concepcion* and it was received on May 19, 2011. (ECF Nos. 63 & 64.)

The case is currently stayed pending resolution of the instant Motion. (ECF No.

48.) No discovery has been conducted and no scheduling order has been entered.

## II. ANALYSIS

Defendants move to compel arbitration under the Arbitration Agreements signed by Plaintiffs as part of their enrollment process. (ECF No. 15.) The Motion and Plaintiffs' opposition raise two issues: (1) whether Arbitrator Baker's decision is binding on Plaintiffs; and (2) if collateral estoppel does not apply, whether the arbitration agreement is unconscionable.

### A. Collateral Estoppel and Arbitrator Baker's Determinations

Defendants argue that Plaintiffs are precluded from raising unconscionability because Arbitrator Baker has already ruled that the Arbitration Agreements were not unconscionable and his decision was confirmed by the Colorado District Court. In determining whether a state court judgment has preclusive effect, a federal court applies the issue preclusion principles of the state rendering the judgment. *Hawkins v. C.I.R.*, 86 F.3d 982, 986 (10th Cir. 1996). Under Colorado law, collateral estoppel bars relitigation of an issue if: (1) the issue is identical to that actually and necessarily adjudicated in a prior proceeding; (2) the party against whom estoppel is asserted was a party or in privity with a party in the proceeding; (3) there was final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 82 (Colo. 1996).

Even if Defendants could show that all four prongs for collateral estoppel were

satisfied,[1] "[u]nder Restatement (Second) of Judgments § 28(2)(b) (1982), there is an exception to the doctrine of collateral estoppel when 'the issue is one of law and a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise avoid inequitable administration of the laws.'" *Central Bank Denver v. Mehaffy et al.*, 940 P.2d 1097, 1103 (Colo. App. 1997).

Whether a contract is unconscionable is a question of law. *See Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 850 (10th Cir. 1986). The United States Supreme Court issued *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) on April 27, 2011—over nine months after Arbitrator Baker issued his decision finding that the Arbitration Agreements were not unconscionable. *Concepcion* held that the Federal Arbitration Act preempted California's judicially-created rule regarding the unconscionability of arbitration clauses in adhesion contracts. Though unconscionability is generally governed by state law, and Colorado's unconscionability standard is different than California's, the *Concepcion* decision has broad enough implications that it constitutes an intervening change in the applicable legal context. As Defendants admitted in their response to the Court's request for supplemental briefing, "*Concepcion* has implications important to this case." (ECF No. 63 at 5.) Given this intervening

---

[1] The Court has reservations about whether Defendants could show Plaintiffs Krol and Bernal were in privity with the Mensch Plaintiffs. There were no formal Rule 23 protections afforded to Bernal or Krol; they were not notified of the arbitration proceeding or given the opportunity to opt out. Arbitrator Baker made no finding as to the capacity of the Mensch Plaintiffs to serve as adequate class representatives or with respect to whether counsel was fit to serve as class counsel. Given these facts, Plaintiffs certainly have a plausible argument that barring their claims under the doctrine of issue preclusion would violate their Due Process rights. However, because the Court finds that the *Concepcion* decision constitutes a change in the law that warrants revisiting the issues determined by Arbitrator Baker, it need not decide whether Plaintiffs Krol and Bernal were in privity with the Mensch Plaintiffs.

change in the law, the Court finds that its consideration whether the Arbitration Agreements are unconscionable is not barred by collateral estoppel. Accordingly, the Court will examine the merits of Defendants' Motion to Compel Arbitration and Plaintiff's opposing argument that the arbitration agreement is unenforceable.

**B.     Merits of Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") was enacted in response to judicial hostility to arbitration agreements. *See Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008). Section 2 of the FAA provides, in relevant part: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has described Section 2 "as reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility, Inc. v. Concepcion*, 131 S. Ct. 1740, 1742 (2011) (internal quotations and citations omitted).

In this case, Plaintiffs do not argue that they did not sign the Arbitration Agreements. They also do not dispute that the nature of their claims falls within the scope of the Arbitration Agreements. Thus, the only issue is whether the Arbitration Agreements are enforceable contracts. If they are, the Court must compel the parties to arbitration.[2]

---

[2] At argument on the instant Motion, the parties agreed that whether such arbitration should be class or individual is a matter for the arbitrator to decide. Thus, the only issue for the Court is whether the parties should be compelled to arbitration in general.

### 1. Legal Standard for Unconscionability

One of the legal grounds for revoking a contract is unconscionability. *Univ. Hills Beauty Acad. Inc. v. Mountain States Tel. & Tel. Co.*, 554 P.2d 723, 726 (Colo. 1976). "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 445 (2006). Therefore, to defeat Defendants' Motion to Compel Arbitration, Plaintiffs must show that the Arbitration Agreement itself—and not the contract in general—is unconscionable and, therefore, unenforceable. *See Rent-A-Center*, 130 S. Ct. at 2278 ("If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4.").

Colorado courts consider several factors in determining whether a contractual provision is unconscionable, including: (1) the use of a standardized agreement executed by parties of unequal bargaining power; (2) the lack of an opportunity for the customer to read or become familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the provision in question; (4) the absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive fairness; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) the circumstances surrounding the formation of the contract, including setting, purpose, and effect. *Davis v. M.L.G. Group*, 712 P.2d 985, 991 (Colo. 1986).

In *At&t Mobility v. Concepcion*, the Supreme Court held a state may not apply its

own law on contract interpretation and formation—including unconscionability—in a manner that interferes with the Federal Arbitration Act's presumption in favor of arbitration. *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011). The Court held: "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA. But the inquiry becomes more complex when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration." *Id.* at 1747. The Court struck down California's so-called *Discover Bank* rule which provided:

> When the waiver [of class proceedings] is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . the waiver becomes in practice the exemption of the party "from responsibility for its own fraud, or willful injury to the person or property of another." Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Discover Bank v. Superior Court*, 36 Cal.4th 148, 162 (Cal. 2005) (quoting Cal. Civ. Code § 1668).

The Court stated that "[t]he 'principal purpose' of the FAA is to 'ensure that private arbitration agreements are enforced according to their terms.'" *Id.* at 1748 (quoting *Volt Information Sciences v. Bd. of Trustees*, 489 U.S. 468, 478 (1989)). The Court acknowledged that parties may agree to limit the subject of their arbitration, may agree to arbitrate according to specific rules, and may limit with whom they arbitrate.

"The point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute." *Id*. at 1749. However, the Court emphasized that there is "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Id*. The Court concluded that "class arbitration, to the extent it is manufactured by *Discover Bank* rather than consensual, is inconsistent with the FAA." *Id*. at 1751. Thus, because the *Discover Bank* rule disfavored arbitration, it was preempted by the FAA. *Id*.

Because Colorado's test for unconscionabilty of a contract provision does not explicitly disfavor arbitration (class or otherwise), the degree to which *Concepcion* changes the legal landscape in Colorado is unclear. There does not appear to be any reason why the *Davis* factors are not still good law. Thus, the Court will consider the facts of this case under that structure, keeping in mind the Supreme Court's statements and observations in *Concepcion*.

    2.    <u>Application</u>

The Arbitration Agreements were contained within standardized agreements prepared by Defendants and not available for Plaintiffs to review until they started the enrollment process. Plaintiffs have submitted affidavits stating that they did not know there was an arbitration clause in their enrollment documents; that no one pointed out the arbitration provisions or explained what they meant during the enrollment process; that they do not remember seeing the arbitration provisions; and that they did not believe they had the ability to negotiate the terms of their contracts. Plaintiffs were required to complete the enrollment documents—including signing the Arbitration

Agreements—before they were permitted to speak with financial aid advisors. Though Plaintiffs could have chosen to pursue their education elsewhere, Defendants held the majority of the power in this situation and utilized it to persuade Plaintiffs into enrolling with their schools. All of these factors weigh in favor of finding the contracts unconscionable.

Plaintiffs' argument has considerable validity and the Court would likely have found that the Arbitration Agreements at issue here unconscionable pursuant to the *Davis* analysis if it were issuing this decision pre-*Concepcion*. But the Court has to take the legal landscape as it lies and cannot ignore the Supreme Court's clear message. Plaintiffs are essentially arguing that the adhesive nature of the contracts at issue here (*i.e.*, standardized forms, lack of ability to negotiate, power disadvantage, etc.) makes the arbitration clause unconscionable. In *Concepcion*, the Supreme Court rejected the idea that arbitration agreements are *per se* unconscionable when found in adhesion contracts. The Court recognized that California's rule applied only to adhesion contracts and observed that "the times in which consumer contracts were anything other than adhesive are long past." *Id.* at 1750. The Court noted that states were "free to take steps addressing the concerns that attend contracts of adhesion—for example, requiring class-action-waiver provisions in adhesive arbitration agreements to be highlighted" but ruled that "[s]uch steps cannot, however, conflict with the FAA or frustrate its purpose to ensure that private arbitration agreements are enforced according to their terms." *Id.* at 1750 n.6. Thus, the fact that the contract at issue in *Concepcion* was an adhesion contract did not affect the Supreme Court's analysis and, indeed, the majority in *Concepcion* appeared to be little troubled by that fact. As a

result, this Court has no alternative but to discount the weight to be attributed to the adhesive nature of the Arbitration Agreements at issue here.

Plaintiffs also argue that if they are not allowed to proceed as a class—either in arbitration or through this lawsuit—they will not be able to pursue their claims. They assert that the nature of the claims, *i.e.* fraud, takes time and upfront work to develop, and that no attorney will be willing or able to do that on an individualized basis. They also contend that the confidential, non-precedential nature of arbitration will make it impossible to pursue these claims on an individualized basis as their strongest witnesses—former employees of Defendants—would be forced to testify over 800 times.

Again, the Court is sympathetic to this argument. There is no doubt that *Concepcion* was a serious blow to consumer class actions and likely foreclosed the possibility of any recovery for many wronged individuals. The dissent in *Concepcion* recognized the impact of the majority's decision and argued that it would effectively end the ability to prosecute small-dollar claims and that those claims would slip through the legal system. *Id.* at 1761. Countering this argument, the majority wrote: "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 1753. Thus, the Supreme Court considered the fact that the Concepcions and other class plaintiffs would be denied any recovery by its ruling, and ruled against the class plaintiffs nonetheless. The Court is bound by this ruling and, therefore, cannot be persuaded in this case by the fact that ordering the parties to

arbitration may impact Plaintiffs' ability to recover.[3]

Ultimately, there is no dispute that the agreement to arbitrate was prominently written in the enrollment documents, including an entirely separate document entitled "Agreement to Binding Arbitration and Waiver of Jury Trial". (ECF No. 15-2.) There is also no evidence that Plaintiffs were subject to significant external pressure driving them to sign the documents without taking time to review them and/or have someone else review them. The Arbitration Agreements here appear to contain relatively standard terms, which would suggest that they are substantively fair. Plaintiffs had to ability to cancel the contracts and receive a substantial refund. Finally, there is a competitive market for education programs such as those offered by Defendants and Plaintiffs could have chosen to pursue their education elsewhere. All of these factors weigh against a finding of unconscionability.

Courts have repeatedly held that there is nothing inherently unfair about an agreement to arbitrate. *See, e.g., Adams v. Merrill Lynch*, 888 F.2d 696, 700 (10th Cir. 1989) ("There is certainly nothing inherently unfair about the arbitration clauses, and they are therefore valid and enforceable."). The Arbitration Agreements signed by Plaintiffs are not out of the mainstream. The circumstances in which the Enrollment

---

[3] The Court notes that this case seems more likely than many others to be able to proceed via individual arbitration. Each individual Plaintiffs' claims are significantly larger than in many consumer class actions and the arbitration clause states that the Defendants bear a majority of the costs for any such arbitration. Moreover, the Colorado Consumer Protection Act contains a fee-shifting provision which would allow Plaintiffs, if successful, to recover their attorneys' fees. *See* Colo. Rev. Stat. § 6-1-113(2)(b). At argument, defense counsel stated that at least two of the *Mensch* Plaintiffs have pursued individual class arbitration since the Arbitrator ruled on the claim construction matter. He did not indicate the outcome of those proceedings but the mere fact that they took place confirms the idea that some individual Plaintiffs may be willing and able to pursue their claims through individual arbitration.

Agreements were signed does not appear to have been any more coercive than is common in a typical adhesion contract. Thus, given the Supreme Court's ruling in *Concepcion*, the Court finds that the arbitration agreements signed by Plaintiffs in this case were not unconscionable. Accordingly, the Court must enforce the Arbitration Agreements according to their terms and order the Plaintiffs to submit their claims to arbitration.

### III.  CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Arbitration (ECF No. 15) is GRANTED. The Clerk of the Court is directed to administratively close this case without prejudice to a party moving to have the case reopened for good cause shown upon completion of arbitration proceedings, or for another proper purpose.

Dated this 6th day of June, 2011.

BY THE COURT:

_____
William J. Martínez
United States District Judge